IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| John Doe,[1] <br><br> Plaintiff, <br><br> v. <br><br> State of Tennessee, <br><br> William Edward Haslam, <br> in his official capacity <br> as the Governor of the State of Tennessee, <br><br> Herbert H Slatery III, <br> in his official capacity <br> as the Attorney General of the State of Tennessee, <br><br> Deborah Taylor Tate, <br> in her official capacity <br> as the Administrator of State Courts <br> of the State of Tennessee, <br>  Defendants. | Case No. 3-18 0471 |

Complaint under Title II of the Americans with Disabilities Act

1. Plaintiff, John Doe, is a citizen of the State of Tennessee residing in Nashville, Tennessee, with a divorce pending in a county within the Court's district boundaries.

2. Defendant, State of Tennessee is a public entity and the 16th State admitted to our Federal Union.

---

[1] John Doe seeks to remain anonymous due to the social stigmas associated with mental illness, the ready availability of court published court decisions on the internet, his desire to remain in public employment, and his desire to live without retaliation or stigma or fear thereof, relative to both this lawsuit and his mental illness. Litigation related to mental illness is an appropriate reason for plaintiff anonymity. *See, e.g., Doe v. Gallinot,* 486 F. Supp. 983 (C.D. Cal. 1979); *Doe v. Harris,* 495 F. Supp. 1161 (S.D.N.Y. 1980); *Doe v. Colautti,* 592 F.2d 704 (3rd Cir. 1979); and *Doe v. N.Y. Univ.,* 442 F. Supp. 522 (S.D.N.Y. 1978).

1

3. Defendant, William Edward Haslam is the Governor of the State of Tennessee and charged with enforcement of the laws of the State of Tennessee.

4. Defendant, Hebert H. Slatery III, is the Attorney General of the State of Tennessee and charged with the defense and enforcement of the laws of the State of Tennessee.

5. Defendant, Deborah Taylor Tate is the Administrator of State Courts, and responsible for state judge judicial training and orientation of new judges. In addition, under Tenn. Supreme Court R. 45 she is responsible for statewide court compliance with the Americans with Disabilities Act (A.D.A.).

## Jurisdiction and Venue

6. This action arises under the laws of the United States, specifically Title II, Part A of the A.D.A., 42 U.S.C. § 12131-12134. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), as all the parties work or reside in the Middle District of Tennessee. All of the events giving rise to the claims occurred in the Middle District of Tennessee.

8. Declaratory and injunctive relief against state officials to prohibit enforcement of laws which conflict with Federal Constitutional provisions and Federal statutes is consistent with our federal system, as defined by the Supremacy Clause (U.S. Constitution, Art. VI, cl. 2), and the 10th, 11th, 14th Amendments to the Constitution. *Ex parte Young,* 209 U.S. 123 (1908).

9. Further, the State may be sued outright in its own name where the protected A.D.A. interest affected is a fundamental right protected under § 5 of the 14th Amendment to the U.S. Constitution, as Congress clearly intended to abrogate state Sovereign Immunity

under the AD.A. *Tennessee v. Lane*, 541 U.S. 509, 533-34 (2004). Specifically, parenting rights are such a fundamental liberty interest. *Troxel v. Granville,* 530 U.S. 57, 65 (2000).

**Facts**

10. John Doe has a mental health diagnosis, having been hospitalized for five days in February 2018 for Major Depression, recurring, with suicidal ideation.

11. John Doe has filed for divorce from his wife in a Chancery Court of the State of Tennessee and is the father of children, whose custody and visitation shall be determined by application of Tennessee Code Ann. § 36-6-106 and may be re-determined over the course of the next decade or more.

12. John Doe's wife has alleged that John Doe's custody and visitation should be severely restricted, based primarily upon identifying his current psychotropic medication, discussing his suicidal ideation incident, and pointing to the one mental health hospitalization. At this time John Doe has no custody and visitation is supervised and limited, at least on a temporary basis, due primarily to the mental health allegations.

13. Unfortunately, limiting of visitation rights based on mere stigma regarding mental illness is all too common in Tennessee's courts. *See e.g. Culbertson v. Culbertson*, 455 S.W.3d 107, 113-125 (Tn Ct. App 2014) [father subject to supervised visits for years while divorce pending due to wife making mental health allegations, despite no psychologist ever recommending supervised visits.]

3

14. According to the Tennessee Department of Mental Health and Substance Abuse Services, Fast Facts Sheet,[2] 20.4% of the adult population in the state has had a mental health diagnosis in the last year. Therefore, it should not be surprising that in a spot review of just 5 other pending divorce cases involving children in the county John Doe is getting divorced, John Doe found a mother on supervised visits for months. In that case, her husband made her bipolar disorder an issue by simple allegation that she had a diagnosis. The mother remains on supervised visits while an independent psychological evaluation is done, despite countering in court filings that she recently needed and obtained a simple medication adjustment.

## Statutory Provisions at Issue

15. A mental health diagnosis such as John Doe's entitles him to protection under the A.D.A., as a "qualified individual with a disability." 42 U.S.C. § 12131(2) & § 12102(1), *see also* 28 C.F.R. § 35.108.

16. Title II of the A.D.A. applies to public entities, which includes state and local governments or any administrative instrumentality thereof. 42 U.S.C. § 12131.

17. "Subject to the provisions of this subchapter (Title II of the A.D.A.), no qualified individual with a disability shall, by reason of such disability…be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

18. "A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration (i) That have the effect of subjecting qualified

---

[2] Plaintiff considers this to be an admission by a party opponent. The Fast Facts sheet is available for download at: https://www.tn.gov/content/dam/tn/mentalhealth/documents/DPRF_Fast_Facts_4.7.2017_ke.pdf and in this cases uses the most recently available data from 2013-14.

individuals with disabilities to discrimination on the basis of disability…" 28 C.F.R. § 35.130 (b)(3).

19. Tenn. Code Ann. §36-6-106, states, in pertinent part:

> **(a)** In a suit for annulment, divorce, separate maintenance, or in any other proceeding requiring the court to make a custody determination regarding a minor child, the determination shall be made on the basis of the best interest of the child. In taking into account the child's best interest, the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors set out in this subsection (a), the location of the residences of the parents, the child's need for stability and all other relevant factors. The court shall consider all relevant factors, including the following, where applicable:
>
> …
>
> **(8)** The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. The court may order an examination of a party under Rule 35 of the Tennessee Rules of Civil Procedure and, if necessary for the conduct of the proceedings, order the disclosure of confidential mental health information of a party under § 33-3-105(3). The court order required by § 33-3-105(3) must contain a qualified protective order that limits the dissemination of confidential protected mental health information to the purpose of the litigation pending before the court and provides for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings;
>
> …
>
> **(e)** The disability of a parent seeking custody shall not create a presumption for or against awarding custody to such a party but may be a factor to be considered by the court.

**Claim #1 – Tenn. Code Ann. § 36-6-106 is void on its face, as it offends the 14th Amendment protections afforded to the fundamental liberty interest of parenting, as it violates Title II of the Americans with Disabilities Act and its enforcing regulations, by allowing a disability to be a factor in custody and placement determinations.**

20. Plaintiff re-alleges ¶ 1-19, *supra*.

21. Tennessee Code Ann. §36-6-106, on its face, violates Title II of the A.D.A. and the regulations promulgated thereunder, as the state statute allows the state courts to

impermissibly consider A.D.A. protected parental disabilities as factors in child custody and visitation, and in many cases may be the determinative factor.

22. Declaratory judgment and injunctive relief are necessary to stop the Defendants from continuing to use criteria in the administration of child custody and visitation determinations that violate Title II of the A.D.A.

**Claim #2 – In the alternative, Tenn. Code. Ann. § 36-6-106 may be given saving construction, consistent with Title II of the A.D.A, if the statute allows courts to consider only the real and direct threat to the child, if any, posed by the disability.**

23. Plaintiff re-alleges ¶ 1-19 & 22, *supra,* and are incorporated herein.

24. Whenever a statute may be given a saving construction, allowing it to operate consistent with Federal constitutional, statutory, or regulatory provisions, such construction should be given. *Hooper v California,* 155 U.S. 648, 657 (1895).

25. Tenn. Code Ann. § 36-6-106 can be read to mean that in determining custody and visitation, a court may consider a real and direct threat to the child posed by a parent's disability.

26. This interpretation would be consistent with the regulations made under Title II of the A.D.A.:

> "In determining whether an individual poses a direct threat to the health or safety of others, a public entity must make an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk."

28 C.F.R. § 35.139(a).

27. A.D.A. regulations permit actual demonstrated risks to be factors considered by a public entity, but expressly prohibit such determinations to be made by speculation, stereotypes, or generalizations. *See* 28 C.F.R. § 35.130(h) & § 35.139(a).

28. Given that the fundamental liberty interest of parenting is at stake and that the A.D.A. exists to protect those with disabilities, the party asserting that a parent's disability poses a direct threat should have the burden of proving such threat, by clear and convincing evidence. Further, such determination needs to be made expeditiously.

29. Declaratory judgment is appropriate, clarifying that an A.D.A.-recognized disability itself cannot be considered for purposes of child custody and visitation. However, consistent with the A.D.A., proven and unmitigated risks stemming from the disability may be considered.

30. Further, injunctive relief to give such declaratory judgment effect is required.

**Wherefore, the Plaintiff prays the Court for relief as follows:**

1. Declaratory Judgement that Tenn. Code § 36-6-106 violates Title II of the Americans with Disabilities Act, on its face, in as much as it is illegal to consider a parent's disability, including mental health.

2. Injunctive relief barring the courts of Tennessee from considering a parent's mental or physical disability as a factor in custody and visitation determinations.

3. In the alternative, declaratory judgement that to provide the protections of the A.D.A. and the 14th Amendment for the fundamental liberty interests involved in parenting:

> Consistent with the 14th Amendment to the Constitution and Title II of the Americans with Disabilities Act, a court may consider a parent's disability or mental health, in child custody and visitation determinations, under Tenn. Code. Ann. §36-6-106 *only* to the extent that the unmitigated risk stemming from the parent's disability poses a direct threat to the health, safety, and welfare of the child(ren).

A litigant in a child custody and visitation matter, who alleges a parent, due to an A.D.A.-protected disability, poses a direct threat to the child(ren), has the burden of proof to show, by clear and convincing individualized evidence of a medical or objective nature, not stigma or generalized fear, that 1.) there currently exists an increased probability of injury or harm to the child(ren) due the parent's disability, and 2.) the risk is not fully mitigated by treatment or auxiliary aids.

Upon such a showing and upon a clear factual finding on the record by the trier of fact identifying the unmitigated risk to the child(ren), in making determinations of custody and placement, the court shall determine the least restrictive safety procedures necessary, given the nature, duration, and severity of the unmitigated risk arising from the parent's disability.

4. In the alternative, other declaratory judgments that the Court may fashion necessary to provide A.D.A. protection in child custody and visitation matters to qualifying parents with disabilities.

5. Injunctive relief requiring the Defendant, Administrator of State Courts, to immediately distribute this Court's declaratory judgment to all state court judges and to provide the order to future judges at orientation.

6. Injunctive relief requiring the Defendant, Administrator of State Courts, to distribute this Court's declaratory judgment in a manner equivalent to its dissemination of the forms for Temporary and Permanent Parenting Plans.

7. Injunctive relief requiring the Defendant, Administrator of State Courts, provide training regarding this judgment, and disability awareness in general, to all judges in the state.

8. Injunctive relief requiring the Administrator of State Courts to include language on all standardized parenting plan forms that, "If a parent has a disability or mental health diagnosis, or may be regarded as having such a disability, the parent is protected from discrimination on that basis alone by the Americans with Disabilities Act."

9. Other injunctive relief as may be required to enforce the Court's declaratory judgments.

10. Costs and fees.

Respectfully Submitted,
May 17, 2018

_____
John Doe
*Pro se* Plaintiff

P.O. Box 8411
Hermitage, TN 37076
JohnDoePlaintiff@gmail.com