UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOHN DOE, 18-471, et al., | |
| Plaintiffs, | Case No. 3:18-cv-00471 |
| v. | Judge William L. Campbell, Jr.<br>Magistrate Judge Alistair E. Newbern |
| STATE OF TENNESSEE, et al., | |
| Defendants. | |

To:     The Honorable William L. Campbell, Jr., District Judge

## **REPORT AND RECOMMENDATION**

The Doe family has been living through difficult times, as the parents divorce, navigate mental-health issues, and litigate custody of their three children. As part of that process, pro se Plaintiff John Doe 18-471 (Doe) has been afforded limited supervised visitation with his children pursuant to state-court child custody and protective orders. Rather than contest these orders in state forums, Doe, who is an attorney, has filed this action alleging that various state, county, and individual defendants have violated his and his children's federal rights under the United States Constitution and Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131, et seq. Doe's amended complaint asks this Court to remedy those violations by modifying the protective and custody orders issued by the state court.

Defendants Jane Doe, the State of Tennessee, Governor William Edward Haslam, Attorney General Herbert H. Slatery, III, Administrator of State Courts Deborah Taylor Tate, the Dickson County Chancery Court, and Chancellor David Wolfe (the State Defendants), and the Dickson County General Sessions Court, and Judge Craig Monsue (the County Defendants) have filed

motions to dismiss Doe's amended complaint.[1] (Doc. Nos. 34, 83, 100.) Because the federal courts are not an appropriate forum for actions seeking modification of child custody orders, and for the reasons explained below, the Magistrate Judge will recommend that the defendants' motions to dismiss be granted and that this action be dismissed without prejudice for lack of subject-matter jurisdiction.

## I.      Factual and Procedural Background[2]

### A.      State-Court Divorce and Custody Proceedings

This action arises out of Doe's divorce and child custody proceedings in the General Sessions and Chancery Courts of Dickson County, Tennessee. Doe states that he was hospitalized for depression and suicidal thoughts in February 2018. (Doc. No. 23.) Following his release, he informed his then-wife, Jane Doe, that he wanted a divorce. (*Id.*) Jane Doe filed a motion in Dickson County General Sessions Court seeking a protective order against Doe on behalf of herself and the couple's children. (*Id.*) Her motion detailed episodes of violence against her and the children and referenced Doe's mental-health issues and recent hospitalization. (*Id.*; Doc. No. 23-1.) General Sessions Judge Craig Monsue held a hearing on the motion for a protective order at

---

[1]      Defendants Kirk Vandivort and Reynolds, Potter, Ragan & Vandivort, PLC (Reynolds Potter) also filed a motion to dismiss (Doc. No. 68), then filed a joint stipulation of dismissal with Doe regarding all of Doe's claims against them (Doc. No. 110). The Court dismissed Defendants Vandivort and Reynolds Potter on April 24, 2019 (Doc. No. 111). This Report and Recommendation therefore does not address their motion to dismiss. To the extent the amended complaint asserts claims on behalf of Doe's minor children, Doe lacks the authority to stipulate to dismissal of his children's claims with prejudice. *See Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) (holding that "a minor's personal cause of action is [his or] her own and does not belong to [his or] her parent or representative"). However, to the extent that the amended complaint asserts claims against Vandivort and Reynolds Potter on behalf of Doe's children, the Court lacks subject-matter jurisdiction over those claims and will recommend dismissing them without prejudice.

[2]      These facts are drawn from Doe's amended complaint and attachments.

which witnesses testified about Doe's mental health and Jane Doe's counsel Kirk Vandivort argued "that because of John Doe's mental health diagnosis and medications, no one could know for sure if [he] was safe to be around the children . . . ." (*Id.* at PageID# 252–53.) Judge Monsue found that Jane Doe had proven her allegations of abuse by a preponderance of the evidence and issued an order prohibiting Doe from having any contact with Jane Doe or their children. (*Id.*) Doe appealed that order to the Dickson County Chancery Court and moved for his own protective order against Jane Doe. (*Id.*) According to Doe, the Chancery Court took no action regarding his appeal or his motion for a protective order. (*Id.*)

While Jane Doe's motion for a protective order was still pending in General Sessions Court, Doe filed for divorce in Dickson County Chancery Court. (*Id.*) Doe and Jane Doe filed competing proposals regarding a child custody plan. (*Id.*) Doe also filed "a notice of disability under the Americans with Disabilities Act," informing the Chancery Court that he had been diagnosed with major depression and "asking the court not to discriminate against" him because of that diagnosis. (*Id.* at PageID# 255.)

Chancery Court Judge David Wolfe held a hearing in the divorce proceedings regarding, among other issues, Doe's motion for temporary custody and visitation. Jane Doe was again represented by Vandivort. Doe alleges that Vandivort and Judge Wolfe "had an odd, seemingly mocking exchange regarding [Doe's] notice of disability and request for protection under the ADA." (*Id.*) During the hearing, Judge Wolfe ordered the appointment of a guardian ad litem for the Doe children, "set aside John Doe's motion challenging the appropriateness, under state law, of the 'no contact' provision" of the General Sessions Court's protective order, and "directed the parties to the hallway to negotiate supervised visitation." (*Id.*) Ultimately, Judge Wolfe ordered that Doe visit his children for two hours every other week while supervised by Jane Doe's sister

and brother-in-law; that Doe undergo a mental-health evaluation as authorized by Rule 35 of the Tennessee Rules of Civil Procedure; and that the Does and their children undergo a family evaluation. (*Id.*) Jane Doe's sister and brother-in-law later informed the Court that they would not continue supervising Doe's visits with his children. (*Id.*)

Doe's mental-health evaluation was completed in early July 2018 and Doe filed another motion for a temporary custody and visitation order soon thereafter. (*Id.*) Doe alleges that, during a hearing on the motion, Judge Wolfe "stated his disregard of the Americans with Disabilities Act," expressed concern over the results of Doe's mental-health evaluation, and told Doe he would have to prove that he was not a danger to his children. (*Id.* at PageID# 257.) Doe further states that Judge Wolfe was openly dismissive of Doe, refused to hear from Doe's witnesses, and adjourned the hearing pending the results of the family evaluation. Judge Wolfe also ordered Doe to hire a professional visitation supervisor at his own expense. (*Id.*) Doe states that he "would like to present the Court with transcripts or recordings of these divorce proceedings," but explains that "Dickson County Chancery Court proceedings are not recorded and a court reporter is not present unless hired by the parties." (*Id.* at PageID# 259.)

### B. Doe's Amended Complaint

Doe initiated this action on May 18, 2018 (Doc. No. 1), while his divorce was ongoing (Doc. No. 23). Doe's amended complaint (Doc. No. 23) includes a variety of claims on behalf of Doe and his minor children, all of which arise out of the divorce and custody proceedings.[3]

---

[3]     As Defendant Jane Doe points out in her motion to dismiss, parents may not assert claims on behalf of their minor children while proceeding pro se. (Doc. Nos. 83, 84.) *See Shepherd*, 313 F.3d at 970 (holding that "parents cannot appear *pro se* on behalf of their minor children"). Doe has separately filed a motion for the Court to appoint a guardian ad litem to represent his children in this case. (Doc. No. 30.) Because a finding that this Court lacks subject-matter jurisdiction over the children's claims would moot Doe's motion to appoint a guardian ad litem, *see Avoki v.*

Counts 1 and 2—brought on behalf of all plaintiffs against all defendants—assert that the no-contact order issued by Judge Monsue violates Tennessee law or, in the alternative, the Fourteenth Amendment's guarantee of due process. Doe asks this Court to void the no-contact order and declare that John Doe may contact his children.

Counts 3 and 4—brought by Doe against the State and County Defendants—claim that Tennessee Code § 36-6-106, which instructs state courts to consider each parent's "moral, physical, mental and emotional fitness" when making custody determinations, Tenn. Code Ann. § 36-6-106, violates Title II of the ADA or, in the alternative, must be narrowly construed in light of the ADA. Under either theory, Doe asks this Court to declare that he "is entitled to immediate entry of his proposed 2nd Amended Temporary Parenting Plan, by default under state law." (*Id.* at PageID# 264, 266.)

Count 5—brought by Doe against the State and County Defendants—asserts that Judge Wolfe's orders that Doe pay for a mental-health evaluation and pay for a visitation supervisor violate Title II of the ADA, and asks the Court for corresponding declaratory and injunctive relief.

Count 6 claims that the State and County Defendants deprived Doe of "fundamental parenting rights" in violation of Title II of the ADA and the U.S. Constitution "based on the prohibited rationale of stereotypical and unspecified fear relative to his mental health diagnosis." (*Id.* at PageID# 267.) Doe seeks monetary damages and declaratory and injunctive relief, again requiring entry of Doe's proposed temporary parenting plan.

Count 7 alleges that the State and County Defendants violated Doe's children's rights by "depriving them of visitation and contact with their father, an activity constituting a fundamental

---

*Ferebee*, No. 3:15-CV-136, 2016 WL 1092307, at *5 (W.D.N.C. Mar. 21, 2016), this Report and Recommendation does not reach that issue.

liberty interest . . . ." (*Id.* at PageID# 268.) Doe requests monetary damages on their behalf and declaratory and injunctive relief requiring entry of Doe's proposed temporary parenting plan.

Count 8 asserts Doe's claim that Jane Doe, Vandivort, and Vandivort's law firm deprived Doe and the children of fundamental federal rights under color of state law and seeks monetary damages. Count 9 asserts a state-law claim for abuse of process against the same defendants and seeks further monetary damages.

Count 10 seeks a declaratory judgment against the State Defendants that the Fourteenth Amendment requires state courts to "take immediate action to ensure all hearings in courts of record are contemporaneously recorded verbatim" and provided to the parties at no cost. (*Id.* at PageID# 272.)

### C.     The Defendants' Motions to Dismiss

On October 24, 2018, the State Defendants filed a motion to dismiss arguing that this Court lacks jurisdiction to hear Doe's claims or his children's claims and, in the alternative, that the amended complaint fails to state any claims against the State Defendants on which relief can be granted. (Doc. Nos. 34, 35.) Doe filed a timely opposition to the State Defendants' motion. (Doc. No. 53.)

On November 19, 2018, Jane Doe filed a notice of special appearance and a motion to dismiss the amended complaint, arguing that defects in Doe's service of process deprive the Court of personal jurisdiction over her and that Doe lacks capacity to assert claims on behalf of the couple's minor children while proceeding pro se. (Doc. Nos. 83, 84.) Doe responded that he does not object to dismissal of Jane Doe as a defendant and that he has moved for the appointment of a guardian ad litem to advocate for the children's interests. (Doc. No. 99.)

On December 20, 2018, the County Defendants filed a motion to dismiss, arguing that this Court lacks subject-matter jurisdiction over the amended complaint, that insufficient service of

process deprives the Court of personal jurisdiction over the County Defendants and, in the alternative, that the amended complaint fails to state viable claims against the County Defendants. (Doc. Nos. 100, 101). Doe filed a timely response in opposition on January 3, 2019. (Doc. No. 102.)

## II. Legal Standard

Whether a court has subject-matter jurisdiction is a "threshold determination" in any action. *Am. Telecom Co. v. Republic of Lebanon*, 501 F.3d 534, 537 (6th Cir. 2007). "The requirement that jurisdiction be established as a threshold matter 'spring[s] from the nature and limits of the judicial power of the United States' and is 'inflexible and without exception.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998) (alteration in original) (quoting *Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884)). This reflects the fundamental principle that "[j]urisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Id.* at 94 (quoting *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868)); *see also Wayside Church v. Van Buren Cty.*, 847 F.3d 812, 816 (6th Cir. 2017) (explaining that courts are "bound to consider [a] 12(b)(1) motion first, since [a] Rule 12(b)(6) challenge becomes moot if th[e] court lacks subject matter jurisdiction" (quoting *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990))). The party asserting subject-matter jurisdiction bears the burden of establishing that it exists. *Ammons v. Ally Fin., Inc.*, 305 F. Supp. 3d 818, 820 (M.D. Tenn. 2018).

Because the Magistrate Judge finds that this Court lacks subject-matter jurisdiction over the amended complaint, the Court will not address the defendants' additional arguments in favor of dismissal.

**III.      Analysis**

Doe asserts that this Court has subject-matter jurisdiction over his and his children's federal claims under 28 U.S.C. §§ 1331 and 1343. Section 1331 provides district courts with jurisdiction over cases involving federal questions—i.e., "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1343 confers federal jurisdiction to hear certain civil-rights actions, including actions brought under 42 U.S.C. § 1985; actions to redress deprivations, under color of state law, of equal rights guaranteed by federal law; and actions for damages, equitable relief, or other relief under "any Act of Congress providing for the protection of civil rights, including the right to vote." 28 U.S.C. § 1343(a)(4); *id.* § 1343(a)(1)–(3).

"The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Hudgins Moving & Storage Co. v. Am. Express Co.*, 292 F. Supp. 2d 991, 1002 (M.D. Tenn. 2003) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). While this rule focuses on the plaintiff's allegations, "it allows a court to look past the words of a complaint to determine whether the allegations, no matter how the plaintiff casts them, ultimately involve a federal question." *Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 475 (6th Cir. 2008). Claims asserted under the Constitution or federal statutes that "clearly appear[ ] to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . claim[s that are] wholly insubstantial and frivolous" are insufficient to confer federal subject-matter jurisdiction. *Bell v. Hood*, 327 U.S. 678, 682–83 (1946); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 279 (1977); *Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co.*, 491 F.3d 320, 332 (6th Cir. 2007).

It is well established that "[f]ederal courts have no jurisdiction to resolve domestic relations disputes involving child custody or divorce." *Partridge v. State of Ohio*, 79 F. App'x 844, 845 (6th Cir. 2003) (citing *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)); *see also Johnson v. Collins*, Civil No. 15-31, 2015 WL 4546794, at *3 (E.D. Ky. July 28, 2015) ("Federal courts lack jurisdiction to issue child custody decrees."). Moreover, "a plaintiff may not seek a reversal of a state court judgment simply by casting his complaint in the form of a civil rights action." *Hagerty v. Succession of Clement*, 749 F.2d 217, 220 (5th Cir. 1984); *see also Coogan v. Cincinnati Bar Ass'n*, 431 F.2d 1209, 1211 (6th Cir. 1970) ("The Civil Rights Act was not designed to be used as a substitute for the right of appeal, or to collaterally attack [state court judgments] . . . ."). Thus, to determine subject-matter jurisdiction, "[i]t is incumbent upon the district court to sift through the claims of the complaint to determine the true character of the dispute to be adjudicated." *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 796 (6th Cir. 2015) (quoting *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1216 (6th Cir. 1981)). In actions like this one, the "key question is whether the case is 'a core domestic relations case, seeking a declaration of marital or parental status, or a constitutional claim in which it is incidental that the underlying dispute involves a [domestic relations dispute]." *Johnson*, 2015 WL 4546794, at *3 (alteration in original) (quoting *Catz v. Chalker*, 142 F.3d 279, 291 (6th Cir. 1998), *abrogated on other grounds by Coles v. Granville*, 448 F.3d 853, 859 n.1 (6th Cir. 2006)).

Turning first to the amended complaint's purported federal causes of action, Doe casts his and his children's claims as seeking relief under the ADA and the Constitution, but at the core of each and every claim is a request that this Court modify the protective and child-custody orders issued in his state-court divorce and custody proceedings. This is particularly apparent in Counts 1 through 7, all of which expressly request modifications of state-court orders. While the amended

complaint also requests money damages in conjunction with Counts 6 and 7, awarding such damages would require a finding that the underlying state-court orders were unlawful. The same is true of the damages requested in Count 8, which are premised on finding the violations alleged in Counts 1, 2, or 7. (Doc. No. 23, PageID# 269, ¶ 138.) Even Count 10—Doe's claim that the Dickson County Chancery Court's failure to provide litigants with free transcripts of hearings violates constitutional due process—stems from Doe's desire "to present th[is] Court with transcripts or recordings of [his] divorce proceedings" in support of his other claims. (*Id.* at PageID# 259, ¶ 78.)

Because this case is, at heart, Doe's attempt to modify the state court's child-custody orders, this Court lacks subject-matter jurisdiction over it under either 28 U.S.C. §§ 1331 or 1343. *See Partridge*, 79 F. App'x at 845 (holding that district court lacked jurisdiction where plaintiff "attempt[ed] to assert civil rights claims," but "essentially raise[d] domestic relations issues by challenging [state] court child custody and divorce decisions and by seeking relief in the form of shared custody of his children"); *Johnson*, 2015 WL 4546794, at *3 ("Even when a plaintiff raises other claims, federal courts do not have jurisdiction when the 'core' issue is one of domestic relations, meaning that the plaintiff seeks a divorce, alimony, or child custody decree."); *Sanchez-Preston v. Luria*, No. CV-96-2440, 1996 WL 738140, at *3 (E.D.N.Y. Dec. 17, 1996) ("Because plaintiff's § 1983 claim arises out of an allegedly erroneous or unconstitutional judicial proceeding in the New York Family court, no valid predicate for jurisdiction lies with this Court.").

Doe's assertion that "this case is predominately a federal question issue, not a core issue of marital or parental relations" is belied by the amended complaint's allegations. (Doc. No. 53, PageID# 430.) For example, Doe's claim that "the state courts are ill-equipped to resolve this matter in a timely fashion" implies that he has chosen this forum for perceived efficiency, not

because he raises core federal-law issues. (Doc. No. 23, PageID# 258, ¶ 75.) The same is true of his allegation that "[t]his case presents nothing short of a family hostage crisis . . . . The Tennessee legal system is broken and all Defendants must be held to account. Most importantly and most urgently, this Court must free the hostages." (*Id.* at PageID# 250, ¶ 25.) It appears that Doe has invoked the ADA and the Constitution solely for the purpose of protesting the outcome of his divorce and child-custody proceedings in this Court. But federal jurisdiction cannot be created in that way. *See Gentek Bldg. Prods., Inc.*, 491 F.3d at 332 ("Where the plaintiff's claims are 'clearly immaterial, made solely for the purpose of obtaining jurisdiction or are wholly unsubstantiated and frivolous . . ., the court should dismiss the claim.'" (alteration in original) (quoting *Lawrence v. Dunbar*, 919 F.2d 1525, 1530 n.7 (11th Cir. 1990))); *Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) (explaining that "federal courts lack jurisdiction where the [federal cause of] action is a mere pretense and the suit is actually concerned with domestic relations issues"); *cf. Chevalier*, 803 F.3d at 795–96 ("[A] plaintiff may not artfully cast a suit seeking to modify or interpret the terms of a divorce, alimony, or child-custody decree as a state-law contract or tort claim in order to access the federal courts.")

With respect to Count 9—claiming abuse of process under Tennessee state law—the amended complaint cites 28 U.S.C. § 1367(a) as a basis for supplemental jurisdiction. (Doc. No. 23.) That statute provides district courts with discretion to decline to exercise supplemental jurisdiction over state law claims when it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). In exercising that discretion, courts "consider and weigh several factors, including the 'values of judicial economy, convenience, fairness, and comity.'" *Gamel v. City of Cincinnati*, 625 F.3d 949, 951–52 (6th Cir. 2010) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Where, as here, all federal claims have been dismissed before

11

trial, these factors usually weigh in favor of dismissing the state law claims. *Id.*; *see also Ismaiyl v. Brown*, No. 16-4308, 2018 WL 2273671, at *2 (6th Cir. Mar. 22, 2018) (holding that district court "properly declined to exercise supplemental jurisdiction" over plaintiff's state-law claims after dismissing plaintiff's federal claims stemming from a child-custody dispute); *Beverly v. Beverly*, No. 17-3919, 2018 WL 1176508, at *1 (6th Cir. Jan. 30, 2018) (same). There is no reason to depart from the general rule in this case. The values of judicial economy and comity weigh especially heavily here, as it appears from the amended complaint that the state proceedings regarding child custody are still pending. *See Ankenbrandt*, 504 U.S. at 703 ("As a matter of judicial economy, state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees."); *id.* (noting "the special proficiency developed by state tribunals over the past century and a half in handling issues that arise in the granting of such decrees").

## IV.    Recommendation

For these reasons, the Magistrate Judge RECOMMENDS that the defendants' motions to dismiss (Doc. Nos. 34, 83, 100) be GRANTED and that all claims in this action be DISMISSED WITHOUT PREJUDICE for lack of subject-matter jurisdiction.

Any party has fourteen days after being served with this report and recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this report and recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 17th day of June, 2019.


ALISTAIR E. NEWBERN
United States Magistrate Judge